Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of One Cellular Telephone: Gold Apple iPhone | |
|---|---|
| | Case No. 21-3121 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _7-7-21_
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)     ☐ for____ days (*not to exceed 30*)
☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _6-23-21 @ 12:15 p.m._          _M Morrissey_
*Judge's signature*

City and State: _Phoenix, Arizona_          _Honorable Michael T. Morrissey, U.S. Magistrate Judge_
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a gold Apple iPhone, (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the Casa Grande Border Patrol Station, 396 N. Camino Mercado, Casa Grande, AZ 85122.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 8 U.S.C. § 1324(a)(1)(A) including:

- a. all information related to alien smuggling activity and benefits gained from committing this illegal activity;

- b. all information related to coordinators, co-coordinators, scouts, guides, drivers, recruiters, and money launderers involved in alien smuggling (including names, addresses, telephone numbers, locations, or any other identifying information);

- c. all bank records, checks, credit card bills, account information, or other financial records;

- d. any information recording schedule or travel;

- e. any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

- f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

2

g.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

h.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

i.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

j.  evidence of the times the cellular telephone was used;

k.  passwords and encryption keys that may be necessary to access the cellular telephone;

l.  records of or information about Internet Protocol addresses used by the cellular telephone;

m. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

n.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

3

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of One Cellular Telephone:
Gold Apple iPhone

Case No. 21-3121MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

Located in the District of Arizona, there is now concealed:

The person or property to be searched, described above, is believed to conceal:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 371 | Conspiracy to Bring in, Transport and Harbor Illegal Aliens |
| 8 U.S.C. § 1324(a)(1)(A) | Bringing In, Harboring, or Transporting Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Michael Clinghan**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Genevieve Ozark

_Genevieve A. Ozark_  June 22, 2021

_Applicant's Signature_

Michael J. Clinghan, U.S. Border Patrol Agent
*Printed name and title*

Subscribed and sworn telephonically before me.

Date: 6-23-21 @ 12:15 p.m.

_M Morrissey_
_Judge's signature_

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

*Property to be searched*

The property to be searched is a gold Apple iPhone, (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the Casa Grande Border Patrol Station, 396 N. Camino Mercado, Casa Grande, AZ 85122.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 8 U.S.C. § 1324(a)(1)(A) including:

      a. all information related to alien smuggling activity and benefits gained from committing this illegal activity;

      b. all information related to coordinators, co-coordinators, scouts, guides, drivers, recruiters, and money launderers involved in alien smuggling (including names, addresses, telephone numbers, locations, or any other identifying information);

      c. all bank records, checks, credit card bills, account information, or other financial records;

      d. any information recording schedule or travel;

      e. any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

      f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

h. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

i. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

j. evidence of the times the cellular telephone was used;

k. passwords and encryption keys that may be necessary to access the cellular telephone;

l. records of or information about Internet Protocol addresses used by the cellular telephone;

m. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

n. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

3

<u>**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**</u>

Your affiant, Michael Clinghan, being first duly sworn, hereby deposes and states as follows:

## I.    <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.    Your affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (the "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.    Your Affiant, Michael J. Clinghan, is an agent with the United States Border Patrol (USBP) and has been employed with the USBP since July of 2011. As a Border Patrol Agent, your Affiant is responsible for investigating violations of laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Your Affiant's responsibilities include the investigation of illegal alien smuggling across the United States border. In preparing to become a Border Patrol Agent, your Affiant attended the U.S. Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico.

3.    Prior to working with USBP, your Affiant received his Bachelor of Arts in Criminal Justice from Plymouth State University. Your Affiant is currently assigned to the Casa Grande Border Patrol Station Sector Intelligence Unit. Your Affiant is currently a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants. Your Affiant is familiar with, and has participated in, several traditional methods of investigation, including but not limited to: visual and electronic surveillance, questioning of witnesses, and the use of search and arrest warrants. Your Affiant has also spoken with numerous individuals who have been involved in various aspects of alien smuggling, including recruitment,

planning/conspiring, transportation, and concealment of illegal aliens, as well as the collection, transportation, and repatriation of alien smuggling proceeds, and from doing so, has learned techniques commonly used by those involved in alien smuggling.

4.     Your Affiant has also conducted investigations regarding narcotics offenses and conspiracies associated with narcotics smuggling.  Your Affiant has conducted and participated in investigations that have resulted in the seizure of vehicles, cell phones, weapons, ammunition, and other real property.

5.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; and surveillance conducted by law enforcement officers.

6.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.    **BASIS FOR PROBABLE CAUSE**

7.     On April 28, 2021, Border Patrol Agent (BPA) Maldonado was patrolling near Arivaca, Arizona (AZ).  BPA Maldonado is currently assigned to the Tucson Border Patrol Station's Highway Interdiction Team (HIT).  HIT's main purpose is to enforce human and narcotic smuggling around the outskirts of Tucson.  HIT regularly patrols around Arivaca due to its proximity to remote roads that are utilized to pick up undocumented migrants and transport them to varies locations throughout AZ.  Because HIT patrols daily around Arivaca, HIT is very familiar with the local vehicles that live and pass through the area.

2

8.      That day, on April 28, 2021, BPA Maldonado and other BPAs assigned to HIT observed a white Dodge Charger bearing AZ license plate NLA6SB travelling in tandem with a red Volkswagen Jetta bearing AZ license plate F3A8HA.  BPA Maldonado had not observed these two vehicles in the area before.  BPA Maldonado relayed what he observed to HIT and instructed HIT to monitor the vehicles.  It is a common tactic for human or narcotic smugglers to travel in tandem when committing human smuggling. Human smugglers utilize one vehicle to smuggle undocumented migrants and a second vehicle to scout for law enforcement patrolling the area and/or to draw law enforcement's attention away from the first vehicle as undocumented migrants are picked up.

9.      Later that afternoon, BPA Lugo observed the same Charger and Jetta driving in tandem back toward the Arivaca immigration checkpoint.  While at the Arivaca immigration checkpoint, HIT requested for both vehicles to be sent to secondary inspection to further investigate the vehicles. At secondary inspection, BPA Lugo identified the operator of the white Charger as Jorge ZAMORA and identified the front seat passenger as Yobani RODRIGUEZ.   The operator of the red Jetta was identified as Kelvin VALLE-Gamez.  Because no contraband or undocumented migrants were identified in either vehicle, both vehicles and their occupants were released from secondary inspection. BPA Lugo called your Affiant via telephone to report ZAMORA's and RODRIGUEZ's information, and stated that the two vehicles would likely be traveling in tandem toward Phoenix, AZ.  BPA Lugo stated that he passed the information he had on the white Charger and red Jetta to the Pinal County Sheriff's office (PCSO) working Interstate 10 (I-10) in the event ZAMORA and RODRIGUEZ were to pick up undocumented migrants at another location.

10.     That night, at approximately 10:45 p.m., your Affiant received a telephone call from PCSO Deputy Williams.  Deputy Williams reported that he and his partner, Deputy Nardelli, located and conducted traffic stops on the white Charger bearing AZ

3

license plate NLA6SB and the red Volkswagen Jetta bearing AZ license plate F3A8HA. Both vehicles were travelling in tandem when they were observed by PCSO. Deputy Williams reported that the driver of the white Charger was ZAMORA, and the front seat passenger was RODRIGUEZ. No other occupants or contraband were observed in the Charger by Deputy Williams, so the Charger was released. Deputy Williams informed your Affiant that Deputy Nardelli stopped the Jetta and identified VALLE as the driver of the vehicle, which contained two passengers believed to be undocumented migrants. PCSO called the Casa Grande Border Patrol to determine alienage on the two passengers.

11.     At approximately 11:00 p.m., BPAs Patt and Quintero arrived on scene and spoke with Deputy Nardelli. Deputy Nardelli stated he had conducted a traffic stop on the red Jetta for excessive window tint (in violation of A.R.S. § 28-959.01) and driving slow in the fast lane of the interstate (in violation of A.R.S. § 28-721(B)). BPAs Patt and Quintero identified the driver of the Jetta as VALLE and determined he was smuggling two undocumented migrants who were illegally present in the United States without proper documentation. VALLE was arrested and was charged with violating Title 8 of the United States Code, Section 1324. Prosecution was not sought on VALLE due to lack of significant criminal history, facility capacity restrictions, and to minimize the risk of spreading or contracting COVID-19. The two undocumented migrants were removed from the United States without immigration proceedings.

12.     On May 14, 2021, Supervisory Border Patrol Agent (SBPA) Colon conducted a custodial interview of Christopher MARTINEZ-Cervantes. MARTINEZ was the driver involved in a human smuggling event where he was arrested and charged with violating Title 8, United States Code, Section 1324. During the custodial interview, MARTINEZ gave consent to search his cellular phone, and during the search of his phone, MARTINEZ identified a phone number which he stated belonged to the person who facilitated the human smuggling event. The phone number was noted in the report as

(6237554568). Using the Money Service Businesses Transactions program (MSB TRACS)[1], the Casa Grande Tucson Sector Intelligence Unit (CAG-SIU) identified the phone number (6237554568) as the number of a phone used by RODRIGUEZ. Information obtained through MSB TRACS indicated that on April 10, 2021, RODRIGUEZ sent $1,000 USD and listed telephone number 6237554568 and an address in Glendale, AZ in connection with the transaction.

13.     On May 16, 2021, BPA Poole was patrolling near the State Route 83 (SR-83) immigration checkpoint near Sonoita, AZ. While travelling south on SR-83, south of the immigration checkpoint, BPA Poole encountered a blue GMC Acadia bearing AZ temporary tag U365599 driving off road, parallel with the SR-83 fence line. BPA Poole identified the Acadia's driver as RODRIGUEZ. Of the three passengers in the Acadia, BPA Poole was able to identify only VALLE, who was sitting directly behind RODRIGUEZ. BPA Poole informed RODRIGUEZ that he would be unable to cut the private fence line to get back on the main road, so would have to turn around and drive north. BPA Poole knew that once RODRIGUEZ drove to the main road, he would have to drive through the immigration checkpoint.

14.     Approximately two hours later, BPA Poole observed the Acadia driving north toward the SR-83 immigration checkpoint with only two occupants in the vehicle instead of four. BPA Poole further observed the Acadia travelling in tandem with a white Dodge Ram bearing AZ license plate KDA7FB. Both vehicles were travelling toward the SR-83 immigration checkpoint. At the immigration checkpoint, both vehicles were inspected. RODRIGUEZ was identified as the driver of the Dodge Ram with a front seat passenger. VALLE was driving the Acadia also with a front seat passenger. Further

---

[1] TRACS is a web-accessible database used by law enforcement to monitor person-to-person money transfers and investigate human trafficking, human smuggling, narcotics trafficking, and terrorism. Several money transfer services, including Western Union, provide TRACS with the information an individual supplies to a third-party money transfer service to execute a money transfer. Such information includes the individual's name and address, the transaction date and amount, the location the funds were sent to, and the name of the transfer recipient.

investigation on the Dodge Ram revealed that it was reported stolen. All subjects were turned over to the Department of Public Safety (DPS) for further investigation. RODRIGUEZ was arrested for being in possession of a stolen vehicle. VALLE was determined to be cleared by DPS and was released with the Acadia.

15. Your Affiant has knowledge of this investigation and conducted criminal history checks of RODRIGUEZ, which revealed an extensive criminal history involving multiple human smuggling charges. RODRIGUEZ is currently on federal probation pertaining to a human smuggling conviction in California. As of May 26, 2021, a fully extraditable federal warrant was issued for RODRIGUEZ for a probation violation.

16. On June 1, 2021, Your Affiant disseminated a "Be on the Lookout" message (BOLO) to Border Patrol Stations within Tucson Sector for RODRIGUEZ, his known associates, and vehicles suspected of being utilized to smuggle undocumented migrants. One of the vehicles in the BOLO was the blue GMC Acadia bearing AZ temporary tag U365599 registered to VALLE.

17. On June 7, 2021, SBPA Damron was informed via radio of a blue SUV suspected of being involved in human smuggling. It was reported that the SUV was attempting to circumvent the Federal Route 15 immigration checkpoint. SBPA Damron travelled west on Federal Route 42 (FR-42), on the Tohono O'odam Nation Reservation, and observed a blue GMC Acadia bearing AZ temporary tag U365599. The GMC Acadia matched the description of the vehicle that was transmitted on the radio. SBPA Damron initiated a traffic stop on the Acadia to perform an immigration inspection since the vehicle evaded the immigration checkpoint by utilizing an unpaved road that circumvents the immigration checkpoint. The driver was identified as RODRIGUEZ and the front-seat passenger was later identified as Maria VALENZUELA. No other occupants or contraband were found in the vehicle. RODRIGUEZ was arrested for his active federal

warrant and transported to Casa Grande Border Patrol Station to be turned over to the United States Marshals.

18.     Later that evening, BPA Coronado and your Affiant conducted a custodial interview of RODRIGUEZ.   At approximately 10:09 p.m., BPA Coronado read RODRIGUEZ his *Miranda* rights in the Spanish language via service Form I-214. RODRIGUEZ acknowledged that he understood his rights and signed a written waiver of his rights.

19.     Because RODRIGUEZ stated that he understands and speaks English but prefers talking in Spanish, his interview was conducted in the Spanish language.  During his interview, RODRIGUEZ was evasive and not forthcoming on information pertaining to human smuggling.   RODRIGUEZ denied being involved in human smuggling and provided agents with untruthful statements.   RODRIGUEZ was asked to provide his telephone number and he provided a telephone number that was suspected to be false.

20.     During the interview, RODRIGUEZ powered on his gold iPhone (SUBJECT CELLULAR TELEPHONE) upon your Affiant's request.   Your Affiant then used his government-issued phone to call the phone number (6237554568) that was associated with the human smuggling event on May 14, 2021 and identified via MSB TRACS as belonging to a phone used by RODRIGUEZ.  This was not the number that RODRIGUEZ provided. When the phone number (6237554568) was dialed, the SUBJECT CELLULAR TELEPHONE in RODRIGUEZ's possession began to ring.  On the front screen of the SUBJECT   CELLULAR   TELEPHONE,   your   Affiant   could   clearly   see   his government-issued  phone  number  (5203667929)  listed  as  the  caller  identification. RODRIGUEZ was informed of knowledge pertaining to his human smuggling activity and of the information concerning how his phone number was obtained.  RODRIGUEZ seemed visibly upset when he was confronted with this information, and he did not wish to continue answering questions.

7

21.     Due to RODRIGUEZ's prior involvement in human smuggling and his possession of a phone that was used to facilitate the human smuggling event on May 14, 2021, the SUBJECT CELLULAR TELEPHONE will be held as evidence pertaining to an ongoing human smuggling investigation.  The SUBJECT CELLULAR TELEPHONE was seized and is currently in the lawful possession of USBP at the Casa Grande Border Patrol Station.   In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state, as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of USBP.

## III.   **ITEMS TO BE SEIZED**

22.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

23.     Based on my training, education and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows that certain characteristics are common among individuals involved in Alien Smuggling Organizations ("ASO"). Individuals involved in alien smuggling activity tend to:

a.     Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b.     Collect data pertaining to other co-conspirators involved in alien smuggling activity, as well as monies owed and/or paid for illegal activity;

c.     Possess and maintain records reflecting bank transactions and/or money transfers;

d.   Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including within electronic communication devices, such as the SUBJECT CELLULAR TELEPHONE;

e.   Correspond with and/or meet with other alien smuggler associates;

f.   Retain correspondence from other alien smugglers and co-conspirators relating to alien smuggling activity; and

g.   Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smugglers have been in contact related to alien smuggling activity.

24.   ASOs tend to utilize cellular telephones (such as the SUBJECT CELLULAR TELEPHONE) to communicate when conducting their illegal activity, utilizing voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. Therefore, evidence related to alien smuggling activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

25.   In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

26.   As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

27.   *Probable cause.* I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

     a.     I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

     b.     Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

     c.     Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

28.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely

accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the

records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

29.      *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

30.      *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.     CONCLUSION

31.     This affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose. I have thoroughly reviewed the affidavit and the attachments to it, and attest that there is sufficient evidence to establish probable cause that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A) (bringing in, transporting, and harboring of illegal aliens), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

Border Patrol Agent Michael Clinghan
United States Border Patrol

Subscribed and sworn telephonically before me this 23 day of June, 2021.

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge

14